UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>NICHOLAS JAMES MORGAN-DEROSIER,<br><br>                    Defendant. | Cr. No. 3:22-cr-5-PDW<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS** |

Defendant, Nicholas James Morgan-Derosier, submits this Memorandum in support of his motion to suppress. The Court should suppress all evidence seized from or because of the search of Mr. Morgan-Derosier's home, including all so-called "fruit of the poisonous tree." The search was conducted based on a warrant that was invalid on its face because it lacked particularity and was overbroad. Additionally, the warrant was executed in an unreasonable and unconstitutional manner.

I.   **Background[1]**

   A.   **Det. Buzzo began investigating Mr. Morgan-Derosier's business.**

The investigation into Mr. Morgan-Derosier began in 2019. On 15 October 2019, an Order of Injunction was issued against Mr. Morgan-Derosier in the Grand

---

[1] For the purposes of this motion, Mr. Morgan-Derosier describes the facts as they are presented in the police reports and Detective Buzzo's Affidavit. He does not admit that they are true and reserves his right to dispute all of the allegations contained in this summary.

Forks County District Court.[2] Under this order, Mr. Morgan-Derosier and his business, Team Lawn and Landscape, were prohibited from doing business in the state of North Dakota.[3]

During the summer of 2020, Grand Forks Police Department Detective David Buzzo began investigating whether Mr. Morgan-Derosier was operating a business in violation of the court order. Det. Buzzo conducted an internet search, which revealed a business called "Derosier Outdoors" had posted job openings on 27 and 28 July 2020.[4] These posts listed the contact name of "Nick" and a phone number associated with Mr. Morgan-Derosier.[5]

On 24 August 2020, Rebecca Peterson reported to Det. Buzzo that she had seen Mr. Morgan-Derosier's vehicle and equipment at a local condo.[6] Det. Buzzo then drove to the condo complex. He determined there were two ongoing landscaping projects: one at a condo belonging to Ruth Ann Halvorson, and one at the condo of Ray Holmberg.[7] Outside, Det. Buzzo observed landscaping equipment and materials and a trailer registered to Team Lawn.[8] After visiting the condos, Det. Buzzo called Ms. Halvorson.[9] Ms. Halvorson said she'd paid Mr. Morgan-Derosier and his company to replace her patio.[10] She said she had also hired

---

[2] Exhibit 1, Order of Injunction (Bates 927-931).
[3] *Id.* ¶ 15(c).
[4] Exhibit 2, Grand Forks Police report (Bates 544-568), at 544–45.
[5] *Id.* at 545.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 546.
[10] *Id.*

Derosier Outdoors for three other landscaping projects.[11] Each of those projects was ongoing in 2020.[12]

On 25 August 2020, Det. Buzzo saw Mr. Morgan-Derosier's red Ford F-150 truck parked near Ms. Halvorson's condo.[13] Although Mr. Morgan-Derosier was not present, Det. Buzzo spoke with several individuals who said they had been working for Mr. Morgan-Derosier since at least 3 August 2020.[14] They said they were paid by Mr. Morgan-Derosier and that he used QuickBooks accounting software on his home office computer.[15] One of the employees showed Det. Buzzo an electronic paystub from Mr. Morgan-Derosier, with a business name of "Garden & Patio HQ, DeRosier Outdoor," and an address that matched Mr. Morgan-Derosier's home address.[16] The three employees also verified Ms. Halvorson's information regarding other job sites.[17]

While Det. Buzzo was speaking to the employees, he asked to speak to Mr. Morgan-Derosier.[18] When he arrived, Mr. Morgan-Derosier told Det. Buzzo he thought the October 2019 order was illegal and unconstitutional.[19] Mr. Morgan-Derosier stated he was operating a new business, called "GPHQ, LLC."[20] Det. Buzzo

---

[11] *Id.*
[12] *Id.* at 546, 556–57.
[13] *Id.* at 546.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 547.
[19] *Id.*
[20] *Id.*

followed up by investigating GPHQ. His research indicated the business name was registered on 15 August 2019, under the name "Nicholas J. Derosier" and Mr. Morgan-Derosier's address.[21] Det. Buzzo also contacted the North Dakota Attorney General's Office, Consumer Protection and Antitrust Division and the North Dakota Secretary of State's Office regarding GPHQ, LLC.[22] He learned GPHQ, LLC, was not a licensed business in North Dakota.[23]

Later that day, Det. Buzzo spoke to another employee, Jack Hirst. Mr. Hirst told Det. Buzzo that he'd worked for Mr. Morgan-Derosier starting 7 May.[24] Mr. Hirst said he had contacted the Attorney General's Office regarding Mr. Morgan-Derosier because Mr. Morgan-Derosier owed him approximately $2,000 for work.[25]

On 28 August 2020, Det. Buzzo spoke with former employee Andrew Fox.[26] Mr. Fox said he'd worked for Mr. Morgan-Derosier and what he believed to be Team Lawn from August 2018 through 31 October 2019.[27] Although Mr. Fox believed he had worked for Team Lawn, he had received a check from "GPHQ, LLC."[28] Mr. Fox had sued Mr. Morgan-Derosier because, he claimed, Mr. Morgan-Derosier owed him unpaid payroll.[29] Mr. Fox also filed a claim against Mr. Morgan-Derosier with the

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 548. Det. Buzzo's reports do not indicate what year Mr. Hirst began working for Mr. Morgan-Derosier.
[25] *Id.*
[26] *Id.* at 549.
[27] *Id.*
[28] *Id.*
[29] *Id.*; Exhibit 3, Fox claim affidavit (Bates 998-99).

North Dakota Department of Labor and Human Rights. Mr. Morgan-Derosier responded to that complaint on 22 November 2019.[30] In his response, Mr. Morgan-Derosier referred to wages Mr. Fox earned during the pay period from 18 October 2019 to 7 November 2019—a pay period that occurred after the 15 October injunction.[31]

On 10 September 2020, Det. Buzzo served a search warrant on United Valley Bank.[32] He sought records for an account he believed was associated with Mr. Morgan-Derosier's landscaping business. The records showed checks, including payment checks from customers, deposited into the account after 15 October 2019.[33] The bank records also show checks were written in the summer of 2020 from the account to two businesses that commonly supply landscaping materials.[34]

As part of his investigation, Det. Buzzo found a website for Garden & Patio HQ, which advertised various landscaping services.[35] The website listed Mr. Morgan-Derosier's phone number.[36]

### B. Detective Buzzo obtained a search warrant for Mr. Morgan-Derosier's home.

On 10 September 2020, Det. Buzzo signed an affidavit in support of a search warrant.[37] In this affidavit, Det. Buzzo described his investigation into Mr. Morgan-

---

[30] Exhibit 4, Team Lawn response (Bates 721-23).
[31] *Id.*
[32] Exhibit 2, at 564–65.
[33] Exhibit 5, Det. Buzzo affidavit (Bates 708-719), p. 715 at ¶ 14.
[34] *Id.*
[35] *Id.* at ¶ 15.
[36] *Id.* at ¶ 16.
[37] *Id.*, p. 708.

Derosier's business practices. The affidavit also explained the role of computers in storing business and financial documents.[38]

Based on his investigation, Det. Buzzo stated that he believed Mr. Morgan-Derosier had used computers or other electronic devices to conduct business.[39] Det. Buzzo believed that, in conducting this business, Mr. Morgan-Derosier had "committed the crimes of Violation of a Judicial Order and Contractors License Required, and Construction Fraud."[40] He requested a search warrant "to search for and seize the computers and other electronic communication devices, electronic storage devices such as the computer's hard drive, removable media such as CDs, DVDs, or portable flash (USB) drives, and the like."[41]

A state magistrate signed a search warrant on 14 September 2020, which states:[42]

---

[38] *Id.*, pp. 715–16 at ¶ 17.
[39] *Id.*, p. 718 at ¶ 21.
[40] *Id.*, p. 718 at ¶ 22.
[41] *Id.*
[42] Exhibit 6, 14 Sept. 2020 search warrant (Bates 705-707).

**TO ANY PEACE OFFICER OF THIS STATE:**

Affidavit having been made before me by David Buzzo, Grand Forks Police Department, that there is reason to believe that on or within the person known as Nicholas Derosier a/k/a Nicholas Morgan-Derosier, presently located at 412 5th Ave S, Grand Forks, ND 58201, there is now being concealed evidence or property, namely, computers, cell phones, other electronic communication devices, electronic storage devices such as the computer's hard drive, removable media such as, CDs, DVDs, or portable flash (USB) drives, as listed in Exhibit A, described with particularity in the attached and incorporated exhibit, which:

- Is evidence of a crime;
- is contraband, fruits of crime, or other items illegally possessed;

and as I am satisfied that there is probable cause to believe that the evidence or property so described is being concealed on the above-described.

**YOU ARE HEREBY COMMANDED** to search, within ten [10] days after receiving this warrant, the named for the evidence or property specified; serving this warrant and making the search during daytime only (6:00AM to 10:00PM), and if the property is found there, to seize it, leaving a copy of this warrant and a receipt for the property seized, and prepare a written inventory of the property seized and bring the property before me.

Given under my hand, with the seal of said court affixed, this 14th day of September, 2020 at 2:58 PM.

The warrant did not incorporate Det. Buzzo's affidavit. The warrant stated there was probable cause to believe that on or within the *person* of Nicholas Derosier (Mr. Morgan-Derosier being located at his residence address), there were the concealed computerized devices listed on Exhibit A. Those devices were either "evidence of a crime" or "contraband, fruits of crime, or other items illegally possessed." The warrant does not state that officers may search for any physical evidence or records stored in a non-electronic form. Boiled down, the warrant authorized officers to go to Mr. Morgan-Derosier's home to seize from his person all computerized devices that were evidence of a crime. The warrant did not limit the scope of the search to a timeframe, cite any specific crimes, or state that officers were permitted to search the computerized devices.

The warrant incorporates Exhibit A. Exhibit A is titled "Description of Items to be Searched For and Seized." Like the warrant, this title does not say the items themselves are to be searched. The first paragraph states: "By forensic or other means of examination: Files containing evidence of the crimes of Contractor License Required, Construction Fraud, and Violation of a Judicial Order in any form wherever they may be stored."[43] Exhibit A then lists all manner of computerized devices, discs, tapes, cassettes, and hardware/software manuals. Like the warrant, Exhibit A does not list non-electronic materials, such as paper records or construction materials or equipment.

### C.   Officers executed the warrant on Mr. Morgan-Derosier's home.

The Grand Forks Police Department (GFPD) executed the warrant on 15 September 2020.[44] Several officers were present at the search, including Detective Jennifer Freeman.[45] Detective Freeman

> is a computer and phone forensics analyst, and she is part of the Internet Crimes Against Children Task Force. She is a certified child forensic interviewer. . . . She has also worked under cover in many capacities and has been a part of multiple law enforcement stings directed at capturing suspects who commit or attempt to commit crimes against children.[46]

---

[43] *Id.*, at 706.
[44] Doc. 1-1, pp. 2–3 at ¶ 6.
[45] Exhibit 2, at 559.
[46] Ashley Rae with Jennifer Freeman, *In Her Honor: Turning a Negative into a Positive*, It's Her Brand Magazine, North Dakota Edition, Issue 4 Jul/Aug/Sept 2018, Cover 2, p. 14, available at:
https://www.itsherbrandmagazine.com/julaugsept-2018 (last visited 20 Dec. 2022).

GFPD was assisted by Homeland Security Investigations (HSI). HSI is a federal law enforcement agency in the Department of Homeland Security.[47]

> HSI has broad legal authority to conduct federal criminal investigations into the illegal cross-border movement of people, goods, money, technology and other contraband throughout the United States. HSI utilizes these authorities to investigate a wide array of transnational crime, including: terrorism; national security threats; narcotics smuggling; transnational gang activity; child exploitation; human smuggling and trafficking; illegal exports of controlled technology and weapons; money laundering; financial fraud and scams; worksite and employment crimes; cybercrime; intellectual property theft and trade fraud; identity and benefit fraud; and human rights violations and war crimes.[48]

HSI Special Agent Daniel Casetta participated in the search.[49] SA Casetta has experience investigating "criminal activity including but not limited to, narcotics, child exploitation, property crimes, physical assaults, sexual assaults, and murder."[50]

During the search, Det. Freeman, SA Casetta, and other Grand Forks Police Department officers seized various electronic storage devices, including computers, cell phones, thumb drives, and external hard drives.[51] Officers did *not* seize the "large volumes of business documents dating back years [which were] located in

---

[47] *Homeland Security Investigations*, U.S. Immigration & Customs Enforcement, https://www.ice.gov/about-ice/homeland-security-investigations (last visited 20 Dec. 2022)

[48] *Id.*

[49] Doc. 1-1, p. 3 at ¶ 7.

[50] *Id.* at ¶ 1.

[51] *Id.* at ¶ 7.

different filing boxes and cabinets."[52] Det. Buzzo "determined those documents were

not relevant to this case."[53]

On 15 September 2020, Det. Freeman began searching the seized devices.[54]

She conducted a preliminary search on a 2GB Lexar thumb drive seized by SA

Casetta.[55] The thumb drive was seized from a safe in Mr. Morgan-Derosier's

bedroom, not from his home office.[56] Det. Freeman did not begin her search with the

home office computer that Mr. Morgan-Derosier's employees had reported he used

to operate QuickBooks.[57] On the thumb drive, Det. Freeman located a folder called

"Mega."[58] Mega "is a popular cloud storage and file hosting service among collectors

of child pornography because data on its services is end-to-end encrypted."[59] Inside

of the "Mega" folder, Det. Freeman found 54 photos and videos.[60] She opened some

of these files and found suspected child pornography.[61]

---

[52] Exhibit 2, at 563.

[53] *Id.*

[54] Doc. 1-1, p. 3, at ¶ 8; Exhibit 2, at 559.

[55] Doc. 1-1, p. 3, at ¶ 8; Exhibit 2, at 559.

[56] Exhibit 2, at 559.

[57] *See id.* at 546.

[58] Doc. 1-1, p. 3, at ¶ 8; Exhibit 2, at 559.

[59] Doc. 1-1, p. 8 at ¶ 15.

[60] Exhibit 2, at 559.

[61] *Id.*

### D. Det. Freeman obtained a warrant to search Mr. Morgan-Derosier's electronic devices for evidence of child pornography.

On 16 September 2020, Det. Freeman applied for and received a second search warrant, based on suspicions of child pornography.[62] In support of probable cause, Det. Freeman cited the fact that she had found suspected child pornography on the Lexar thumb drive.[63]

With this warrant, officers searched the devices seized from Mr. Morgan-Derosier's home and found more suspected child pornography.[64] This evidence resulted in Mr. Morgan-Derosier's present charges.

## II. Discussion

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. A search pursuant to a warrant has two steps:  first, officers must procure a valid warrant; second, the officers must conduct the search in a reasonable manner. Here,

---

[62] Exhibit 7, Det. Freeman affidavit (Bates 1319-1326); Exhibit 8, 16 Sept. 2020 search warrant (Bates 1327-1328).

[63] Exhibit 7, p. 1319 at ¶¶ 3, 6.

[64] Doc. 1-1, pp. 3–6 at ¶¶ 9–11, 21. During the execution of the first search warrant, officers seized a black Android cell phone from Mr. Morgan-Derosier's person. Exhibit 10, p. 3 at ¶ 7. At that time, Det. Freeman was not able to search the phone because it was password protected and she could not bypass the lock code. *Id.* On 20 April 2021, the North Dakota Bureau of Criminal Investigations informed Det. Freeman that they were now able to bypass the lock codes. *Id.* Based on this new capability, on 20 April 2021, Det. Freeman applied for and was granted a search warrant to search the black Android for evidence of child pornography. *See generally* Exhibits 9, 20 April 2021 search warrant (Bates 1417-1418) and 10, Det. Freeman affidavit (Bates 1419-1426).

officers failed both steps. First, the warrant to search Mr. Morgan-Derosier's home was invalid on its face because it was not particular and because it was overbroad. Second, officers executed the warrant in an unreasonable, and, therefore, unconstitutional manner. Finally, the defects in this warrant cannot be saved by the good faith exception because the officers exceeded the scope of the warrant.

### A.     The Constitution requires that warrants be particular and limited in breadth. The warrant for Mr. Morgan-Derosier's home was neither.

The Fourth Amendment creates two important requirements for warrants: particularity and breadth. If a warrant is not particular or if it is overbroad, it is invalid on its face. Evidence seized pursuant to an invalid warrant must be suppressed.

The warrant itself, not any supporting document, must be constitutionally sufficient. *United States v. Campbell*, 6 F.4th 764, 770 (8th Cir. 2014) (amended 2021). However, the Court may consider a supporting document, such as an affidavit, "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 557–58 (2004)). To incorporate a supporting document, the warrant must use "suitable words of reference." *United States v. Curry*, 911 F.2d 72, 77 (8th Cir. 1990). The warrant must use specific language that refers to and relies on the affidavit. *Id.* For example, phrases such as "see attached affidavit" and "as described in the affidavit" are sufficient to incorporate the affidavit. *Id.* It is not enough, however, for the warrant to merely mention that an affidavit was presented

to the authorizing judicial officer. *Id.*; *see also United States v. Szczerba*, 897 F.3d 929, 937 (8th Cir. 2018) ("Both the Supreme Court and this court have concluded that a warrant does not incorporate a supporting affidavit when it merely states that the affidavit establishes probable cause.").

Det. Buzzo's affidavit of probable cause was not incorporated into the warrant. The only mention of the affidavit states, "Affidavit having been made before me by David Buzzo . . . ."[65] This is the kind of statement that only mentions that an affidavit establishes probable cause. It does not incorporate the affidavit. *See Szczerba*, 897 F.3d at 937; *Curry*, 911 F.2d at 77. In fact, the language used to refer to Det. Buzzo's affidavit can be directly contrasted to the language used to refer to Exhibit A. As to Exhibit A, the warrant provides, "there is now being concealed evidence . . . as listed in Exhibit A, described with particularity in the attached and incorporated exhibit . . . ."[66] The language used to describe Exhibit A, particularly the use of the word "incorporated," demonstrates the issuing magistrate knew how to incorporate a supporting document. The magistrate chose to incorporate Exhibit A, but not Det. Buzzo's affidavit. Because Det. Buzzo's affidavit is not incorporated, the Court cannot consider the affidavit to determine if the warrant is constitutionally sufficient.

---

[65] Exhibit 6, at 705.
[66] *Id.*

13

      1.      **The warrant for Mr. Morgan-Derosier's home was not particular because it was totally unlimited as to the crimes under investigation and the time they occurred.**

The particularity requirement of the Fourth Amendment exists to ensure that when law enforcement conduct a search pursuant to a warrant, that search does not become the kind of "wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Saddler*, 19 F.4th 1035, 1040 (8th Cir. 2021) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). The particularity requirement is especially concerning when law enforcement officers search personal computers. *United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013). In *Christie*, then-Judge Neil Gorsuch observed that personal computers hold broad swaths of information, touching all aspects of a person's life. *See id.* They are "the very essence of the 'papers and effects' the Fourth Amendment was designed to protect. In today's world, if any place or thing is especially vulnerable to a worrisome exploratory rummaging by the government, it may be our personal computers." *Id.* (citation omitted).

"To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quoting *United States v. Horn*, 187 F.3d 781, 788 (8th Cir.1999)). This requirement "is a standard of practical accuracy rather than a hypertechnical one." *United States v. Maccani*, 49 F.4th 1126, 1131 (8th Cir. 2022) (quoting *Summage*, 481 F.3d at 1079) (internal quotations omitted).

Particularity is a circumstance-specific question. *Summage*, 481 F.3d at 1079. "Whether a warrant fails the particularity requirement cannot be decided in a vacuum. The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (quoting *Milliman v. Minnesota*, 774 F.2d 247, 250 (8th Cir.1985)). Particularity requires, therefore, that officers can review the warrant and understand, in a practical, circumstance-specific sense, what items and evidence they may search and seize. *Summage*, 481 F.3d at 1079.

Warrants are not particular when they permit computer searches with no limiting principle. *Christie*, 717 F.3d at 1164–65. Specifically, these warrants are invalid when they authorize searches of "any and all information, data, devices, programs and other materials" or "all computer and non-computer equipment and written materials in a defendant's house." *Id.* at 1165 (cleaned up). In contrast, a warrant for a computer search is valid when it is limited to either a specific criminal offense or "specific types of material." *See id.* (citing cases). This approach to particularity ensures that warrants for personal computers do not allow the kind of "general rummaging" prohibited by the Fourth Amendment. *Id.* at 1164.

The warrant for Mr. Morgan-Derosier's home was not particular because it did not identify any criminal conduct under investigation. A warrant does not have to name the exact crime that allegedly took place. *Summage*, 481 F.3d at 1078. The warrant should, however, at least describe the type or nature of the criminal

activity. "[A] search warrant for 'evidence of crime' which does not even specify the type of criminal conduct involved is clearly invalid." 2. W. LaFave, Search & Seizure §4.6(d) n.128 (6th ed.) (Oct. 2022 Update); *see also United States v. Bridges*, 344 F.3d 1010, 1016 (9th Cir. 2003) (holding "warrant's failure to specify what criminal activity was being investigated, or suspected of having been perpetrated, renders its legitimacy constitutionally defective").

Here, the warrant permitted officers to search for electronic storage devices which were "evidence of a crime" or "contraband, fruits of crime, or other items illegally possessed."[67] The warrant did not identify what crime was alleged to have been committed. Because the warrant did not identify a crime under investigation, reasonable officers could interpret it to permit them to rummage through all of Mr. Morgan-Derosier's computers for evidence of any form of criminal conduct. This is the exact kind of general search prohibited by the Fourth Amendment.[68]

---

[67] Exhibit 6, at 705.

[68] Mr. Morgan-Derosier recognizes that the warrant incorporated Exhibit A. One paragraph in Exhibit A refers to "Files containing evidence of the crimes of Contractor License Required, Construction Fraud, and Violation of a Judicial Order in any form wherever they may be stored." Exhibit 6, at 706. This paragraph does not save the warrant for two reasons. First, the warrant only incorporates the list of items in Exhibit A, not the specific crimes identified in Exhibit A. *See* Exhibit 6, at 705 (stating only that the items to be seized are described with particularity in Exhibit A). Second, even if the Court considers the crimes identified in Exhibit A, the warrant itself still contains broad "catch-all" language. It allows the government to search for evidence of "crime," "contraband, fruits of crime, or other items illegally possessed." The warrant permits an "all-encompassing dragnet of personal papers and property" that is "fundamentally offensive to the underlying principles of the Fourth Amendment." *Bridges*, 344 F.3d at 1016.

16

The warrant for Mr. Morgan-Derosier's home also fails the particularity requirement because it is not limited in time. The "failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010) (quoting *United States v. Ford*, 184 F.3d 566, 576 (6th Cir.1999)); *see United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (finding warrant was not particular because, in part, "[t]he government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place"); *Wheeler v. State*, 135 A.3d 282, 304, n.117 (Del. 2016) ("Federal Courts of Appeals have concluded that warrants lacking temporal constraints, where relevant dates are available to the police, are insufficiently particular.") (citing cases). When a warrant permits authorities to search for evidence that is irrelevant to the time frame in which crime could have occurred, the warrant authorizes impermissible "rummaging." *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006).

In this case, officers knew when the alleged offense took place. Det. Buzzo was investigating Mr. Morgan-Derosier for operating a business after he was allegedly forbidden from doing so in an order dated 15 October 2019. The crime, therefore, could not have occurred before 15 October 2019. Yet, neither the warrant nor Exhibit A identify a time frame in which officers alleged the conduct took place. Thus, the warrants allowed officers to seize years' worth of records which had nothing to do with whether Mr. Morgan-Derosier had committed a crime after 15 October 2019.

17

Det. Buzzo's actions demonstrate that the warrant was insufficiently particular. Det. Buzzo decided not to seize "large volumes of business documents dating back years."[69] His decision was not based on the fact that the warrant did not allow him to seize those materials. It was based on his own knowledge that "those documents were not relevant to this case."[70] When a warrant is constitutionally sufficient, that decision is not left to the discretion of a police officer: it is determined by the warrant. *See Marron v. United States*, 275 U.S. 192, 196 (1927) ("The requirement that warrants shall particularly describe things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is to be left to the discretion of the officer executing the warrant."). The fact that the warrant allowed officers to seize documents that Det. Buzzo knew were not relevant solely based on their date demonstrates that the warrant was not particular. Because the warrant failed to limit officers' search to the relevant time period when Mr. Morgan-Derosier *could* have committed a crime, the warrant fatally lacked particularity.

A computer warrant with no discernable limiting principle is unconstitutional because it is not particular. *Christie*, 717 F.3d at 1164–65. There was no limiting principle in the warrant for Mr. Morgan-Derosier's home. It does not specify what kind of criminal activity officers sought to investigate and it was

---

[69] Exhibit 2, at 563.
[70] *Id.*

18

not limited to a time period when that activity could have taken place. Without these limitations, the warrant permitted officers to conduct the kind of general rummaging forbidden by the Fourth Amendment. Because the warrant fatally lacks particularity, the evidence seized pursuant to it should be suppressed.

> **2.    Officers did not have probable cause to search and seize all the items included in the warrant. It was, therefore, overbroad.**

The warrant is also constitutionally unsound because it is overbroad. The breadth requirement is closely tied to the probable cause requirement. *See, e.g.*, *Summage*, 481 F.3d at 1078 (considering the argument that the warrant was overbroad under the "Probable Cause" discussion). Probable cause must support a warrant. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause exits when, considering all the circumstances, there is a fair probability that evidence of a crime will be found in a particular place." *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (cleaned up). The probable cause requirement applies to "every item" sought in the warrant and supporting documents. *See Groh*, 540 U.S. at 560; *United States v. Pitts*, 173 F.3d 677, 681 n.5 (8th Cir. 1999) ("to receive a warrant, police must still demonstrate probable cause to search each location listed on a warrant application.").

But the question of whether a warrant is overbroad is not merely a question of probable cause: it is also a question of nexus. Specifically, the overbreadth doctrine states that "[t]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v.*

*Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). There must be a probable cause connection between the alleged crimes and the items to be searched. *Id.* If the warrant permits officers to search an item but there is not probable cause to believe that item is contraband or evidence of a crime, then the warrant is overbroad and unconstitutional. *See id.*

The warrant here was overbroad. Based on statements from Mr. Morgan-Derosier's employees, officers may have had probable cause to search Mr. Morgan-Derosier's home office computer for QuickBooks accounting materials and other business-related lists and charts. But they did not have probable cause to search his photos and videos.

Nowhere in his affidavit does Det. Buzzo explain or allege that business records are stored as image or video files.[71] Det. Buzzo asserts that "records related to timesheets, payroll information, taxes, accounts payable/receivable, materials inventories, customer names, telephone numbers, address' [sic], communications (including emails, text messages, letters, bids and estimates), project information, billing accounts summaries and other business documents" can be stored in digital formats.[72] The fact that information can be stored in *a* digital format does not mean that it can be stored in *any* digital format. The kinds of written business materials that Det. Buzzo was looking for can be stored in the various file types designed to handle written information. But he did not give any reasoned explanation why that

---

[71] *See* Exhibit 5, at 716 (explaining that various forms of business records can be stored electronically).
[72] *See id.*

kind of data would be stored as a video or a photograph—file formats that are designed for visual displays rather than text information.

The officers had probable cause to search for evidence of specific business crimes which occurred after 15 October 2019. They had probable cause only to search for business-related materials that post-dated the judicial order. But the warrant authorized a broader, all-encompassing search. The authorized search included file types that Det. Buzzo did not have probable cause to believe contained business information. While it is true that computer files can be labeled to look like something else, this is not the kind of case where Mr. Morgan-Derosier was suspected of operating a clandestine business. He was operating his business in the broad light of day, including using QuickBooks accounting software to pay his employees and using a web site and ads featuring his own name, phone number, and address. He admitted doing so to Det. Buzzo. Although officers only had probable cause to search narrow categories of evidence, the warrant permitted them to search broad swaths of Mr. Morgan-Derosier's personal information.

The warrant was fatally overbroad because it extended to too many materials—including photos and videos without any time limitation—for which officers lacked probable cause.

### B. The search of Mr. Morgan-Derosier's devices was unreasonable because law enforcement officers abandoned the authorized search to conduct a general search.[73]

Even if the Court finds that the warrant was valid on its face, it should still suppress the evidence seized during the search of Mr. Morgan-Derosier's computers because the search was unreasonable.

"Courts may properly probe the manner in which law enforcement executes a warrant to ensure compliance with the Constitution." *Lykken v. Brady*, 622 F.3d 925, 930 (8th Cir. 2010) (citing *Hummel-Jones v. Strope*, 25 F.3d 647, 650 (8th Cir. 1994) ("The manner in which a warrant is executed is always subject to judicial review to ensure that it does not traverse the general Fourth Amendment proscription against unreasonableness.")). When law enforcement officers have a valid warrant, the Fourth Amendment requires the officers to execute that warrant reasonably. *United States v. Merrell*, 842 F.3d 577, 581 (8th Cir. 2016). Execution of a search warrant becomes unreasonable when an officer interrupts the search authorized by the warrant and instead begins to search for evidence of another crime. *United States v. Suing*, 712 F.3d 1209, 1212 (8th Cir. 2013); *see also United States v. Hudspeth*, 459 F.3d 922, 928 (8th Cir. 2006) *rev'd in part on other grounds*, 518 F.3d 954 (8th Cir. 2008) (en banc). By interrupting and abandoning the original

---

[73] For the same reasons described in this section, Mr. Morgan-Derosier argues that Det. Buzzo obtained the search warrant as a pretext to permit law enforcement to search his computers for child pornography. Mr. Morgan-Derosier asserts that a pretextual warrant is unconstitutional because it permits an unreasonable search. He recognizes, however, this circuit's contrary caselaw. *See United States v. Romo-Corrales*, 592 F.3d 915, 918–19 (8th Cir. 2010). He preserves this argument to raise on appeal.

search, the officer proceeds without judicial authority. *Suing*, 712 F.3d at 1212. Without judicial authority, the search is unconstitutional. *See id.*

The Court of Appeals for the Eighth Circuit distinguishes between two different factual scenarios. In the first, the fact pattern found in *Suing* and *Hudspeth*, an officer conducts an authorized search. During the search, the officer finds evidence of other contraband. The officer immediately stops the search and obtains a new warrant to search for the new contraband. *Suing*, 712 F.3d at 1212; *Hudspeth*, 459 F.3d at 928. These searches are constitutional because the officer has not abandoned the search he was authorized to conduct. The second scenario is the fact pattern that occurred in *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999) (applying the plain view doctrine). In this scenario, an officer conducts an authorized search. Again, he finds contraband. But instead of stopping the search to get a new warrant, he continues to search to find more of the new contraband. *Id.* at 1271. This search is unconstitutional because the officer intentionally dug for evidence unrelated to the purpose of the authorized search. *Id.* at 1273. Thus, he used a warrant to conduct an impermissible general search. *Id.*

The search of Mr. Morgan-Derosier's computer devices was unreasonable because officers abandoned their search for evidence of business crimes to search for evidence of child pornography. Officers abandoned the search for evidence of business crimes *at least* by the time Det. Freeman began searching the Lexar thumb drive and she had *certainly* abandoned it when she began searching the "Mega" folder. Det. Freeman had investigated Mr. Morgan-Derosier for possession

23

of child pornography in early 2019.[74] She, an expert in investigating crimes against children, and SA Casetta, a federal officer who investigates "narcotics, child exploitation, property crimes, physical assaults, sexual assaults, and murder," participated in executing a search warrant for state business crimes. Det. Freeman did not begin her search with Mr. Morgan-Derosier's home office computer, even though that was the device that his employees said he used to run QuickBooks. Instead, she began her search with the thumb drive SA Casetta found in Mr. Morgan-Derosier's bedroom. And instead of looking for documents that might contain the text of business records, Det. Freeman immediately began opening image and video files.

Once Det. Freeman began searching the thumb drive, she did not follow the procedures outlined in Det. Buzzo's affidavit for how to search computer devices. Det. Buzzo explained that "[i]n some cases it is possible for investigators to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials."[75] He further explained that officers may use key word searches or directory and file names to find the evidence.[76] But Det. Freeman did not attempt any of those techniques. It does not appear that she ran target searches for key words associated with business records, like "payroll," "projects," "receivables," "employees," or "customers." She did not look

---

[74] Exhibit 11, HSI report of investigation (Bates 3794–97).
[75] Exhibit 5, at 716 at ¶ 19.
[76] *Id.*

for folders that were likely to contain business files. Instead, she identified a folder she associated with child pornography and began rummaging.

Det. Freeman's actions demonstrate she had abandoned the search for evidence of business crimes. Instead, she looked for child pornography. This case is not like the fact patterns in *Suing* and *Hudspeth*, where officers were validly executing a warrant when they found other contraband. Instead, it is like *Carey*. Although officers had received judicial authority to search for evidence of one crime, they surpassed the scope of that authority and executed an impermissible general search. Det. Freeman's methods of searching are inconsistent with how an officer would locate business records. They were targeted toward her area of expertise: finding evidence of crimes against children. Det. Freeman clearly abandoned the authorized search. Her search was unreasonable and unconstitutional.

In executing the search, officers exceeded the scope of the search warrant. The search was unreasonable. All evidence found from the search of Mr. Morgan-Derosier's home and computer devices must be suppressed.

### C. The good faith exception cannot save this evidence from suppression because the officers did not act within the scope of the warrant.

When evidence is obtained in violation of the Fourth Amendment, a court may decline to suppress the evidence under the good faith exception. *See United States v. Leon*, 468 U.S. 897, 906 (1984). "*Leon* establishes that if an officer (1) obtains a search warrant (2) that appears properly issued on its face and (3) executes it within its scope and with objective good faith reliance on the warrant's

validity, then a defect in the probable cause analysis undergirding that warrant will not cause evidence to be suppressed." *United States v. Eggerson*, 999 F.3d 1121, 1124 (8th Cir. 2021); *see Leon*, 468 U.S. at 922.

First, the warrant was so deficient on its face that the officers executing the search should have known it was illegal. "The good-faith inquiry is confined to the objectively ascertainable question of whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (quoting *Leon*, 468 U.S. at 900) (cleaned up). Here, a well-trained officer should have known that the warrant was not particular and that it was overbroad. This is demonstrated by Det. Buzzo's decision not to seize the paper records. Det. Buzzo understood that those records were not relevant to the case because they predated the judicial order. Yet, the warrant authorized him to seize those records if he had decided he wanted to. This broad grant of authority demonstrated that the warrant was not particular. A reasonably well-trained officer in Det. Buzzo's position, therefore, should have understood that the warrant was invalid.

Second, the good faith exception does not apply because officers did not execute the warrant within its scope. The good faith exception only applies when officers execute a warrant within its scope. *Eggerson*, 999 F.3d at 1124, *Leon*, 468 U.S. at 920. Officers exceeded the scope of the warrant in this case. Instead of limiting the search of Mr. Morgan-Derosier's computers to evidence of business crimes, as authorized by the warrant, the officers purposefully searched for evidence

of child pornography. This search was not authorized by the warrant and was outside its scope. By conducting it anyway, officers exceeded the scope of the warrant. Their actions are not protected by the good faith exception.

Finally, the policy purposes of the exclusionary rule support suppression in this case. "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. Here, police officers did not reasonably rely on the magistrate's determination of probable cause. They requested a warrant to search for evidence of one type of crime when they knew they would use the judicial authorization to search for evidence of a different crime—a crime they did not have probable cause to investigate. The Court should deter this unconstitutional behavior by law enforcement. The exclusionary rule should apply, and the Court should suppress the evidence.

### D. The evidence seized from Mr. Morgan-Derosier's home, including all evidence found on his computer devices, should be suppressed.

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment must be suppressed. *Utah v. Strieff*, 579 U.S. 232, 237 (2016). "[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and, relevant here, 'evidence later discovered and found to be derivative on an illegality,' the so-called 'fruit of the poisonous tree.' " *Id.* (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). Evidence is suppressed if the constitutional violation is a "but-for" cause of officers obtaining the evidence. *United States v. Miller*, 11 F.4th 944, 954 (8th Cir. 2021).

All the evidence obtained from Mr. Morgan-Derosier's home and person on 15 September 2020, including all the evidence found on his computer devices should be suppressed. All of this evidence was seized as a direct result of the illegal warrant and the unreasonable execution of that warrant. This includes all evidence obtained pursuant to the 16 September 2020 warrant requested by Det. Freeman.[77] That warrant permitted Det. Freeman to search the computer devices seized during the 15 September search for child pornography. Those devices were seized pursuant to the illegal search warrant and probable cause was based on Det. Freeman's unreasonable search of the Lexar thumb drive. For the same reasons, it also includes all evidence obtained from the 20 April 2021 warrant to search Mr. Morgan-Derosier's black Android cell phone. The black Android was also seized on 15 September 2020. It was not searched immediately because officers could not crack the passcode.[78] It was eventually searched based on the same probable cause as the other computer devices.

Suppression should apply to all other evidence in this case. All other evidence was obtained as a result of the 15 September 2020 search of Mr. Morgan-Derosier's home. In the affidavits in support of the subsequent searches and seizures, officers cited the 15 September search and the alleged child pornography it revealed as a significant basis for probable cause. Without the evidence revealed during the illegal search, officers would not have had probable cause for the subsequent

---

[77] Exhibit 8, at 1327.
[78] *See supra* n. 64.

28

warrants. The illegal search was a but-for cause of officers obtaining the later evidence in this case. It must be suppressed.

## III.   Conclusion

The search of Mr. Morgan-Derosier's home was conducted in violation of his Fourth Amendment right to be free from unreasonable search and seizure. It was authorized by a warrant that was not particular, because it had no limiting principle, and that was overbroad. With this invalid warrant in hand, officers conducted an unreasonable search. They immediately abandoned the authorized reason for the search—to identify evidence of business crimes—and began looking for child pornography. The invalid warrant and unreasonable search violated the Fourth Amendment.

The Court should suppress all the evidence obtained as a result of these violations.

Dated this 20th day of December, 2022.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:

 /s/ Christopher P. Bellmore
Christopher P. Bellmore
Anne M. Carter
Assistant Federal Public Defenders
Attorneys for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
112 Roberts Street North, Suite 200
Fargo, ND 58102
Telephone: 701-239-5111; Facsimile: 701-239-5098
Email: filinguser_SDND@fd.org