IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-cr-05 |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORAUNDUM** |
| NICHOLAS JAMES MORGAN-DEROSIER, a/k/a NICHOLAS JAMES MORGAN DEROSIER, a/k/a NICHOLAS MORGAN DEROSIER, a/k/a NICK JAMES MORGAN-DEROSIER | |
| Defendant. | |

The United States of America, by Mac Schneider, United States Attorney for the District of North Dakota, Jennifer Klemetsrud Puhl, First Assistant United States Attorney, and Charles Schmitz, Trial Attorney, United States Department of Justice, hereby submits its sentencing memorandum for this Court's consideration.

I.      INTRODUCTION

The Presentence Investigative Report (PSIR) recommends, among other sentencing enhancements, a five-level "pattern of activity" enhancement under USSG § 2G2.2(b)(5) because the defendant engaged in a "pattern of activity involving the sexual abuse or exploitation of children." (Doc. 146, PSIR ¶ 29.) The defendant objects to the application of this enhancement because it is based upon charged conduct that was eventually dismissed as well as unsubstantiated claims of sexual abuse by other minors. The United States will establish by a preponderance of evidence the facts necessary to support application of § 2G2.2(b)(5). For the reasons argued below, the United States requests the Court overrule the objection.

## II.      BACKGROUND

On September 15, 2020, Grand Forks Police Department obtained and executed a North Dakota state search warrant for Nicholas James Morgan-Derosier's person ("Morgan-Derosier") and his residence located in Grand Forks, North Dakota.  During the search of the residence, law enforcement seized 14 electronic devices from various places within Morgan-Derosier's residence, including from a safe in his bedroom as well as a cellular phone that was found on his person.  These electronic devices were eventually provided to North Dakota Bureau of Criminal Investigation (NDBCI) Special Agent (SA) Jesse Smith for forensic examination.

SA Smith's forensic examination of the media revealed thousands of video and image files of child pornography as well as naked images of Morgan-Derosier's two prepubescent-age          JV-1 and JV-2. These images were taken over the course of several years in different locations.  For instance, some of the earliest images were produced in Morgan-Derosier's grandmother's home in Champlin, Minnesota, on December 9, 2018, when JV-1 was 8 years of age. Other images were produced more recently.  Specifically, Morgan-Derosier photographed six-year-old JV-2 in a locker room at the YMCA in Maple Grove, Minnesota, on February 2, 2020.  And on April 22, 2020, Morgan-Derosier surreptitiously photographed then 9-year-old JV-1 while he was showering at Morgan-Derosier's residence in Grand Forks, North Dakota.

The forensic examination also revealed that Morgan-Derosier chatted and shared child pornography with numerous individuals via various online platforms.  During some of these chat conversations, Morgan-Derosier disclosed to others that he was sexually abusing JV-1 and JV-2, and in some instances, he even sent them images of            For

instance, on April 27, 2020, Morgan-Derosier sent a Kik user images of JV-1 showering, via the Kik Messaging App. Morgan-Derosier sent these images just five days after he produced them at his residence in Grand Forks. Upon sending the images of JV-1, Morgan-Derosier wrote: "Showering together the other night" and he went on to explain that they—Morgan-Derosier and JV-1—"play together."

In other conversations, Morgan-Derosier sent "John PV" SMS messages containing images, some of which were not recovered during the forensic examination. However, it is evident based upon their text conversations that they depict young boys. For example, Morgan-Derosier sent an image and wrote: "The 11." In response, "John PV" wrote: "Oh the two brothers lol" and he later asked Morgan-Derosier "What all have you done with them?" Morgan-Derosier, in turn, responded "almost everything" and after "John PV" asked for specifics, Morgan-Derosier explained: "Lots of sucking and them [sic] swallowing. Had tip in him and balls deep in his bro." He also wrote: "Lil bro loves to suck and big bro loves taking cock." The user "John PV" then sent Morgan-Derosier child pornography depicting prepubescent children engaged in sexual activity with adult males. Morgan-Derosier subsequently sent an image depicting a young male being sodomized and Morgan-Derosier wrote: "My cock in 14 bro."

Morgan-Derosier also traveled to meet at least one of the men with whom he shared child pornography. On January 22, 2019, Morgan-Derosier sent an image of 5-year-old JV-2 to Justin Langen, via Grindr, after which Langen responded "Instantly hard." Langen then posed the following question:

**Langen:** You give him your?

**Morgan-Derosier:** Hot

3

**Morgan-Derosier:** Mm though not here?

During this same conversation, Morgan-Derosier wrote to Langen: "I love hot boy pussy. 9-13 is my fav." Langen responded "Fav is the same as you . . . Even less in Age tho." Eventually, Morgan-Derosier volunteered that his _____ were prepubescent. "_____ are 5 and 8. That's the 5," presumably referring to the image of JV-2 that he sent to Langen. On January 26, 2019, their conversation continued:

**Langen:** How often do you get young

**Morgan-Derosier:** As often as I can. How about you?

**Langen:** Same here can't help myself

**Morgan-Derosier:** Mmm good. I need you.

**Langen:** Want to come home to you doing one right on the couch.

**Morgan-Derosier:** Mmm me either. I love it so much

**Langen:** Is it bad I want less than the sevennn [sic].

**Morgan-Derosier:** Mmm that sounds perfect

**Morgan-Derosier:** Not at all.

\*   \*   \*   \*

Continuing on January 26, 2019, Morgan-Derosier sent Langen an image or video file that was not recovered during the forensic examination. However, Morgan-Derosier and Langen discussed the file:

**Langen:** Who he

**Morgan-Deroseir:** Bud of mines [sic] son, he's 10

**Langen:** Have vid of guy giving to

**Langen:** Two-thrrr

4

**Langen:** Three

**Langen:** Boi..

**Morgan-Derosier:** Damn that sounds so hot.

**Morgan-Derosier:** I know I have some of those too

**Langen:** It's hot seeing his big dick in him

**Langen:** Can't wait

**Langen:** We're made for each other [sic]

**Morgan-Derosier:** Fuck how big is he

**Langen:** You been all the way in him?

**Morgan-Derosier:** I can't wait either can't stop thinking about us together.  Yes ment [sic] to be.

**Langen:** He's big

**Langen:** And thick

**Langen:** Forcing it in

**Morgan-Derosier:** Yeah I have, I forced it in.

**Langen:** Hot

**Morgan-Derosier:** Oh damn baby, how big, sounds bigger than me?

**Langen:** Love hearing the

**Langen:** Cry

**Langen:** N whimper

**Morgan-Derosier:** Exactly

**Langen:** Who u force in

**Morgan-Derosier:**  My buds son the 10.  When he was 9.

During their online conversations, Mogan-Derosier and Langen discussed meeting in person. Homeland Security Investigations (HSI) SA Dan Casetta later interviewed Justin Langen, who was charged and convicted of possessing child pornography as part of a separate investigation. According to Langen, who admits to having a sexual interest in prepubescent-age boys, Morgan-Derosier drove to Caledonia, Minnesota, to meet him. After they engaged in sexual relations, Morgan-Derosier showed him images of child pornography that Morgan-Derosier claimed depicted JV-1 and JV-2.[1] Morgan-Derosier also told Langen that he had immediate access to JV-1 and JV-2 and that he could drive them to Caledonia, so they could sexually abuse them together. Finally, Morgan-Derosier told Langen that he maintained his child pornography collection in a safe at his residence in North Dakota, which is consistent with where law enforcement recovered much of his child pornography collection during the execution of the search warrant at his residence.

Morgan-Derosier suddenly ended all communication with Langen after which Langen began blackmailing Morgan-Derosier. Langen told law enforcement that he threatened to go to the police about Morgan-Derosier's admission to having sexually abused JV-1 and JV-2 as well as Morgan-Derosier's child pornography collection unless he resumed their relationship. Morgan-Derosier's cellphone includes chat and text conversations between Morgan-Derosier and Langen that corroborate that Langen threatened to go to the police about Morgan-Dorosier's          as well as Morgan-Derosier's child pornography collection. JV-1 and JV-2 have since been forensically interviewed. Although neither JV-1 nor JV-2 made any

---

[1] These images, which depict a prepubescent boy being sodomized, do not show the boy's face. Using Langen's specific description of these images, SA Smith was able to recover them from Morgan-Derosier's cellphone.

disclosures involving sexual abuse, JV-1, who was then 11 years of age, sobbed throughout the interview in response to many of the questions about Morgan-Derosier.

SA Casetta's investigation of Morgan-Derosier also revealed that Morgan-Derosier repeatedly sexually abused V-3 and V-4, beginning when they were in elementary school. According to V-4, Morgan-Derosier groped her breasts and vagina while they lay in bed together when she was a prepubescent girl and Morgan-Derosier was an adolescent. V-4 also reported that Morgan-Deroiser directed her to touch his penis. Then, when V-4 was between eight and ten years of age, and Morgan-Derosier would have been between 14 and 17 years of age, Morgan-Derosier forced her to perform fellatio on him in a bathroom at                         in Champlin, Minnesota. Subsequently, V-4 reported that Morgan-Derosier vaginally raped her and she told law enforcement that she first told               V-3, about the sexual abuse while they were at a church camp together.

Upon returning from camp, V-4 told her father                 about the abuse, and together they reported it to law enforcement. Following this report, Morgan-Derosier was charged with Criminal Sexual Conduct in Anoka County, Minnesota, as an adult. (PSIR ¶ 79.) However, the case was eventually dismissed in 2008 because V-4 recanted her allegations of abuse. V-4 has since explained that she only recanted because                                         requested her to do so. According to V-4, the deal was for Morgan-Derosier to purchase her a vehicle in exchange for her recanting her statement in 2008. In November 2022, SA Casetta interviewed                              During the interview,         corroborated V-4's statement. She admitted to having requested                        , V-4, to recant her statement alleging abuse

7

Following this incident,

Morgan-Derosier's other sister, V-3, also disclosed that she was sexually abused by Morgan-Derosier, beginning when she was in elementary school and Morgan-Derosier was an adolescent under 18 years of age. V-3 never reported her abuse to law enforcement. Rather, V-3 made a disclosure to         and only after         V-4, disclosed. At that time, the decision was made to resolve the matter         Specifically, the plan was for Morgan-Derosier to purchase V-3 a vehicle in exchange for her not reporting him to law enforcement.

As explained by V-3, Morgan-Derosier began sexually abusing her when they lay in bed together when she was in grade school. V-3 told SA Casetta that when V-3 was 11 or 12 years of age and Morgan-Derosier would have been 13, 14, or 15 years of age, Morgan-Derosier directed her to touch his penis and on at least one occasion, he forced her to perform fellatio on him. V-3 also told SA Casetta that Morgan-Derosier attempted to sodomize her when she was 13 years of age and Morgan-Derosier would have been 15 or 16 years of age, but that he never completed the act because his penis was too large for her anus. When V-3 began high school, she refused Morgan-Derosier's sexual advances and she believes this is when he began sexually abusing         V-4.

Finally, SA Casetta's investigation revealed additional juvenile victims located mostly in the Twin Cities area of Minnesota. The forensic examination of Morgan-Derosier's devices revealed defendant chatted with numerous adolescent-age boys, some of whom he arranged to meet for the purpose of engaging in sexual activity. These boys were

8

identified by name and age in the contacts application on Morgan-Derosier's cellular phone. SA Dan Casetta eventually interviewed several of these young men, all but one of whom disclosed that Morgan-Derosier engaged in sexual activity with them when they were underage. Specifically, V-5, V-6, V-7, and V-8 all reported to law enforcement that they met Morgan-Derosier via online after which they sent him nude images of themselves and/or engaged in sexual activity with him. At least one victim, V-8, reports that Morgan-Derosier and another individual raped him in a tent near Park Rapids, Minnesota, in 2020 after Morgan-Derosier met V-8 over Grindr.

### III.   LAW AND DISCUSSION

Section 2G2.2(b)(5) provides for a five-level enhancement if the defendant engaged in "a pattern of activity involving the sexual abuse or exploitation of a minor." The Application Notes to § 2G2.2 define a pattern of activity involving the sexual abuse or exploitation of a minor as: "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct. USSG § 2G2.2, cmt. 1. The term "sexual abuse or exploitation" includes any of the following: (A) conduct prohibited by several enumerated federal criminal statutes, including 18 U.S.C. §§ 2241 (aggravated sexual abuse), 2243 (sexual abuse of a minor or ward); and 2422 (coercion and enticement), among others; (B) a state law offense, if that offense would have violated one of the enumerated federal statutes if it had been committed within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the enumerated federal offenses. USSG § 2G2.2 cmt. 1.

In determining whether § 2G2.2(b)(5) applies, district courts may rely on victim statements, victim testimony, or even a state report describing defendant's sexual exploitation of a minor. United States v. Smith, 967 F.3d 198 (2nd Cir. 2020) (finding enhancement based upon girl's testimony at defendant's sentencing hearing that defendant molested her when she was age three or four); United States v. Landreneau, 967 F.3d 443 (5th Cir. 2020) (relying on defendant's arrest for rapes of two girls despite defendant's presentation of evidence that the two girls were lying). Even though application of the enhancement requires a showing of at least two instances of sexual abuse, these instances may involve a single victim. United States v. Paauwe, 968 F.3d 614, 618-19 (6th Cir. 2020) (affirming application of § 2G2.2(b)(5) based upon defendant's repeated victimization of the same 15-year-old victim). The essence of a pattern of activity is conduct that is both repeated and related. Thus, it could involve multiple victims, but it could also involve just one victim. "The latter is just as much a pattern as the former." Id. at 617.

Moreover, a court may find a pattern of activity based on a preponderance of evidence despite a jury's acquittal of prior sexual abuse or the dismissal of charges. United States v. Ooakie, 993 F.3d 1051, 1053-54 (8th Cir. 2021) (affirming increase under § 2G2.2(b)(5) even though defendant had been acquitted of the prior incident of sexual abuse of a minor). A court can consider the prior abuse once it finds, by a preponderance of the evidence, that the prior prohibited conduct occurred, regardless of whether it resulted in a conviction. Ooakie, 993 F.3d at 1053-54; see also, United States v. Sanchez, 42 F.4th 970, 976 (8th Cir. 2022) (upholding district court's application of a five-level enhancement for engaging in a pattern of prohibited sexual conduct based in part on testimony from victim

10

who testified that defendant engaged in sexual conduct with her twice in 2006 when she was nine years old, despite defendant being acquitted of the charges).

Finally, the district court may consider acts that occurred when defendant himself was a minor in finding a pattern of sexual abuse. United States v. Woodard, 694 F.3d 950, 953 (8th Cir. 2012) (holding that defendant's juvenile adjudication may be considered for enhancement purposes under USSG § 2G2.2(b)(5)) (rev'd on other grounds); United States v. Reingold, 731 F.3d 204, 223-25 (2nd Cir. 2013) (reversing where district court improperly excluded defendant's first two sexual contacts with his half-sister on the ground that defendant was himself a minor); United States v. Alberts, 859 F.3d 979, 983 (11th Cir. 2017) (finding pattern of activity enhancement based on defendant's sexual abuse of his minor relatives thirty years earlier when defendant was a teenager).

In Reingold, the PSIR recommended application of the five-level enhancement under § 2G2.2(b)(5) based upon defendant's three sexual contacts with his half-sister. Id. At 223. Specifically, when defendant was 15 and his sister was eight, he had her manually stimulate his penis; when defendant was 16 and his sister was nine, he again had her manually stimulate his penis while he rubbed his hand over her vagina through her underwear; and when defendant was 18 and his sister was 11, he had her manually stimulate his penis while he rubbed her vagina. Id. At 207. In addition, during the third sexual encounter with his sister, defendant coached her to perform oral sex on him and he, in turn, performed oral sex on her. Id. At 207-08. Despite defendant having admitted to sexually abusing his half-sister, the district court declined to apply the § 2G2.2(b)(5) enhancement for "pattern of activity" because defendant was a minor when the first two contacts occurred. Id. At 223.

11

On appeal, the Second Circuit reversed, holding the district court erred in relying on defendant's minority as grounds not to consider his sexual contacts with his half-sister as a basis for the § 2G2.2(b)(5) enhancement. Id. At 225.  In contrast to other Guidelines, which condition enhancements on whether relevant offenses occurred during adulthood, the Court found § 2G2.2(b)(5) contained no language which required consideration of a defendant's age at the time of the past instances of sexual abuse or exploitation. Id. At 224-25. "In the absence of such language . . . we here conclude that sexual abuse or exploitation of a minor undertaken by a defendant who was a juvenile at the time of the incident is properly considered in applying the § 2G2.2(b)(5) pattern enhancement." Id.

The Second Circuit also addressed the district court's decision not to apply the enhancement on the grounds that the acts were attributable largely to a lack of "proper parental supervision," and were lacking in temporal proximity as to appear "aberrant." Id. The Court held that the lack of temporal proximity to defendant's sexual contacts with his sister was not a permissible ground for refusing to apply the enhancement.  Id. At 224.  Nor was the district court permitted to consider mitigating circumstances, such as lack of proper parental supervision, in excluding conduct that would satisfy the definition of sexual abuse and exploitation from pattern consideration. Id.  So long as the activities qualifying as sexual abuse or exploitation fall within the narrowly defined sphere, "any combination of two or more instances of such abuse or exploitation—not any combination unexplained by mitigating circumstances—the conduct warrants application of the pattern enhancement.  Id. Therefore, if the evidence supports by a preponderance of evidence that the defendant engaged in a pattern of activity, then application of the enhancement is mandatory, not permissive.  United States v. Plotts, 347 F.3d 873, 876 (10th Cir. 2003) (ruling that a plain

reading of § 2G2.2(b)(5) shows that it mandates an increase in the defendant engaged in a pattern).

In this case, a preponderance of evidence supports a finding that Morgan-Derosier engaged in multiple prior instances of "the sexual abuse or exploitation of a minor." Morgan-Derosier's               have credibly made statements about the sexual acts perpetrated on them by Morgan-Derosier when they were in elementary school, and he was a teenager and later an adult.  According to V-3, Morgan-Derosier began sexually abusing her when she was in elementary school, and it continued until she was an adolescent.  She told law enforcement that Morgan-Derosier would sleep with her in bed during which time he forced V-3 to touch his penis.  On at least one occasion, V-3 remembered Morgan-Derosier forcing her to perform fellatio on him.  She remembers Morgan-Derosier pushing her head down to his genital region.  V-3 also told law enforcement about another incident when Morgan-Derosier attempted to sodomize her.  She explained that he did not complete the act only because her anus was too small for his penis.

Similarly, V-3 and Morgan-Derosier's              V-4, told SA Casetta that she too was sexually abused by Morgan-Derosier.  She was residing in Hamm Lake, Minnesota, when Morgan-Derosier first fondled her breasts and vagina.  According to V-4, Morgan-Derosier later forced her to perform oral sex on him when they were visiting              at her house in Champlin, Minnesota.  Lastly, V-4 told SA Casetta that when she was between eight and ten years of age and Derosier would have then been between 14 and 17, he vaginally raped her.  The final incident of abuse occurred at the Morgan-Derosier              when V-4 was 12 years of age and Morgan-Derosier was 18 years of age.  According to a police report, Morgan-Derosier rubbed her breasts and

13

vagina over her swimsuit. V-4 first reported the abuse to V-3 and then her father ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ before she and her father, in turn, reported it to local law enforcement. As reflected in the PSIR, Derosier initially denied the sexual abuse, but following the administration of a polygraph examination (where deception was detected), he admitted to the conduct but explained he was merely touching V-4 for the purpose of demonstrating what another person would do to her if he was attempting to do "something bad" to her. (PSIR at ¶ 79.)

Morgan-Derosier was eventually charged with Criminal Sexual Conduct in Anoka County, but the charge was later dismissed after V-4 recanted. Today, V-4 explains that she only recanted because ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Because each of the above-described incidents plainly qualify as a separate instance of the "pattern of sexual abuse or exploitation of a minor" as that term is defined under USSG §2G2.2(b)(5), the enhancement clearly applies. Specifically, "sexual abuse or exploitation" is only defined as conduct as described in certain statutes: conduct described in U.S.C. §§ 2241, 2242, 2243, 2251(a)-(c), 2251(d)(1)(B), 2251A, 2260(b), 2241, 2422 or 2423, as well as an attempt or conspiracy to commit any of these offenses. USSG § 2G2.2(b)(5), note 1.

Sections 2241 and 2243, which are the relevant statutes here, criminalize a sexual act with someone who is under 12 years of age (§ 2241) and someone who is between the age of 12 and 15 years (§ 2243). A "sexual act," in turn, is defined under § 2246(2)(D) as contact between the penis and the vulva or the penis and the anus; contact between the mouth and the

14

penis; and the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years, among other conduct. Because Morgan-Derosier directed                    to rub his penis; forced them to perform fellatio on him; engaged in vaginal intercourse with his half-sister, V-4; and attempted anal intercourse with           V-3, all of these incidents qualify as a sexual act. Accordingly, the statements of Morgan-Derosier's        alone are sufficient to establish, by a preponderance of the evidence, that Morgan-Derosier engaged in "a pattern of activity involving the sexual abuse or exploitation of a minor."

But there is more. SA Casetta interviewed several men who similarly claimed that Morgan-Derosier engaged in sexual acts with them when they were minors. The chat conversations between Morgan-Derosier and these then-boys that were recovered from Morgan-Derosier's devices belies his claims that he was not aware of their ages. In each instance, the boys either expressly wrote that they were underage or he recorded their ages in his contacts app in his phone. For instance, V-5 told SA Casetta that he met "Nick" two different times, both in Wisconsin, where they performed fellatio on each other. V-5's contact information in Morgan-Derosier's phone accurately reflected his age as 15 years. Likewise, V-6 told SA Casetta that he was 16 or 17 years of age when he and Morgan-Derosier engaged in oral sex together at James McHaney's residence. V-6 explained that he met Morgan-Derosier through James McHaney, a convicted sex offender, who separately reported that he and Morgan-Derosier met underage boys and engaged in sex with them. (See PSIR ¶ 52.) The contact information for V-6 in Morgan-Derosier's phone accurately reflected his age as 17 years. Moreover, in their chats with one another, V-6 wrote that he was not yet 18 years of age.

15

Likewise, Morgan-Derosier engaged in online chats with 15-year-old V-7 wherein he falsely represented that he was 17 years of age. During the chats, V-7 commented that Morgan-Derosier appeared older than 17, and Morgan-Derosier responded that he is often told that he appears older and that he would be turning 18 soon. Thereafter, Morgan-Derosier requested nude images from V-7, after which Morgan-Derosier invited V-7 to "jack off" with him via Skype. They then began communicating via Skype for that purpose. SA Casetta recently interviewed V-7 who did not remember Morgan-Derosier's name, but nonetheless recognized his likeness in a photo that SA Casetta showed him. Although V-7, who is now an adult, does not remember meeting Morgan-Derosier, he said he probably sent him nude images of himself, which is consistent with what the chat logs reflect.

Finally, Morgan-Derosier met 15-year-old V-8 via Grindr in 2020, after which Morgan-Derosier arranged to pick V-8 up near his family's cabin in Park Rapids, Minnesota. V-8 reported to SA Casetta that he expressly told Morgan-Derosier that he was only 15 years of age. According to V-8, Morgan-Derosier picked him up in his red truck and drove V-8 down a road near his family's cabin where Morgan-Derosier had a tent set up with an air mattress inside of it. Once inside the tent, V-8 reported that Morgan-Derosier and another individual repeatedly sexually abused V-8 while V-8 was crying. Specifically, they both sodomized him and Morgan-Derosier attempted to force V-8 to perform fellatio on him. The following morning, Morgan-Derosier drove V-8 back to his family's cabin. After he read a news article about the pending charges involving Morgan-Derosier, he reported that he emailed his Honors Chambers to report the matter.

Because much of the above-described conduct involving adolescent boys violates 18 U.S.C. §§ 2241 (aggravated sexual abuse) and/or 2422 (coercion and enticement), it too

qualifies as predicate offenses for purposes of § 2G2.2(b)(5).  Accordingly, the record establishes a combination of many more than two instances of the sexual abuse or exploitation of a minor.  Therefore, the "pattern of activity" adjustment should be applied and the defendant's objection to the factual basis for § 2G2.2(b)(5) should be overruled.

## Conclusion

In summary, the district court should apply § 2G2.2(b)(5)'s "pattern of activity" enhancement to its calculation of Derosier's recommended Guideline range.

Dated May 23, 2024.

                                        MAC SCHNEIDER
                                        United States Attorney

By:    */s/ Jennifer Klemetsrud Puhl*
        JENNIFER KLEMETSRUD PUHL
        First Assistant United States Attorney
        Quentin N. Burdick United States Courthouse
        655 First Avenue North - Suite 250
        Fargo, ND  58102-4932
        (701) 297-7400
        ND Bar Board ID No. 05672
        Jennifer.Puhl@usdoj.gov
        Attorney for United States

By:    */s/ Charles Schmitz*
        CHARLES SCHMITZ
        Trial Attorney
        Criminal Division
        U.S. Department of Justice
        (202) 913-4778
        Charles.Schmitz2@usdoj.gov