IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS JAMES MORGAN-DEROSIER, a/k/a NICHOLAS JAMES MORGAN DEROSIER, a/k/a NICHOLAS MORGAN DEROSIER, a/k/a NICK JAMES MORGAN-DEROSIER,<br><br>Defendant. | Case No. 3:22-cr-05<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM** |

The United States of America, by Mac Schneider, United States Attorney for the District of North Dakota, and Jennifer Klemetsrud Puhl, First Assistant United States Attorney, hereby objects to defendant Nicholas Morgan-Derosier's requested variance.

Defendant filed his Sentencing Memorandum with this Court on May 23, 2024, (Doc. 157) and although he does not challenge the guideline calculation, he nonetheless requests a 210-month variance from the recommended guideline range. His request for a variance is based upon a policy disagreement with the child pornography guideline. In support of his argument, he cites to the United States Sentencing Commission's June 2021 report, <u>Federal Sentencing of Child Pornography Non-Production Offenses</u> wherein the Commission recommended that the sentencing scheme be revised to account for certain changes in offense conduct. See https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf. (hereinafter 2021 USSG Report).

Courts in <u>this</u> District have repeatedly rejected invitations to disregard certain

enhancements or vary from the guideline range based upon policy disagreements with § 2G2.2.  Regardless, the Sentencing Commission's recent Report does not endorse a reduced guideline range for all child pornography defendants much less <u>this</u> defendant. Rather, the Sentencing Commission merely recommends focus on three factors in imposing a sentence. Consideration of these three factors weigh in favor of a guideline sentence in this case.

> **I.    This Court Should Not Disregard The Child Pornography Guideline**

Defendant requests a substantial variance from the recommended guideline range because he argues the child pornography guideline was not formulated using an empirical approach, but instead promulgated in response to statutory directives.  Although the district court may reject or vary downward based upon a policy disagreement with a particular guideline, it is not required to do so.

To date, district courts in this District have refused to substitute their judgments about the appropriate punishment for that of Congress and instead have routinely and without exception deferred to the child pornography guideline, imposing variances <u>only</u> pursuant to the § 3553(a) factors.  See i.e., <u>United States v. Braun</u>, Case No. 3:18-cr-170; <u>United States v. Cude</u>, Case No. 3:14-cr-27; <u>United States v. Allen</u>, Case No. 3:13-cr-56; <u>United States v. Breitzman</u>, Case No. 1:09-cr-38.  Sentencing courts are not even required to undertake an independent analysis of the development of a particular guideline as it would shift the focus from the defendant's conduct to an unmanageable hearing regarding the history and development of the guidelines.  <u>United States v. Aguilar-Huerta</u>, 576 F.3d 365, 368 (7th Cir. 2009).  For instance, in <u>United States v.</u>

Grober, 624 F.3d 592 (3rd Cir. 2010), the district court held hearings over twelve days during which time numerous witnesses testified, including a law professor proffered by the defense as an expert on the guidelines. Such an analysis has nothing to do with the particular aspects of a case or a defendant.

As the Seventh Circuit recognized, "we do not think a judge is required to consider . . . an argument that a guideline is unworthy of application in any case because it was promulgated without adequate deliberation. He should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline." United States v. Aguilar-Huerta, 576 F.3d 365, 367 (7th Cir. 2009). Other courts, including the Eighth Circuit, have likewise refused to consider whether a particular guideline is based upon unsound policy. United States v. Jones, 563 F.3d 725, 730 (8th Cir. 2009) (holding that district court's refusal to vary from the guidelines based upon a policy disagreement with the child pornography guideline was not erroneous); Unite States v. Hubbard, 414 Fed. App'x 893, 894 (8th Cir. 2011) (rejecting defendant's argument that the district court should have afforded less deference to the sentencing guidelines because those applying to child pornography cases are not based on sufficient empirical support); See also, United States v. Velazquez, 329 Fed. App'x 365 (3rd Cir. 2009) (rejecting defendant's argument, as unsupported by case law, that the child pornography guidelines, like the crack cocaine guidelines, were established as a directive from Congress rather than pursuant to empirical research).

In United States v. Kirchhof, the Sixth Circuit refused to consider whether or not the child pornography guidelines reflected the expertise of the Sentencing Commission

3

because it concluded that "it is the prerogative of Congress to fix the sentence for a federal crime and the scope of judicial discretion with respect to a sentence." 505 F.3d 409, 414 (6th Cir. 2007); See also United States v. Clawson, 303 Fed. App'x 861, 863 (11th Cir. 2008) (unpublished) (rejecting defendant's argument that the court erred in adhering to the guidelines because of the flawed nature of § 2G2.2 and recognizing that "[d]efining and fixing penalties for federal crimes are Congressional, not judicial, functions"). As long as the guidelines are not unconstitutional, "it is not the court's role to second-guess the legislative determination of appropriate sentences made by Congress." Kirchhof, 505 F.3d at 414. So, although a court may consider such an argument, it has the discretion to reject the invitation to vary downward for these reasons. The United States urges this court to do so here.

Defendant cites to United States v. Dorvee, 616 F.3d 174 (2nd Cir. 2010) for the proposition that the child pornography guideline is fundamentally different than other guidelines and can lead to unreasonable sentencing disparities. In Dorvee, the Second Circuit determined that there was a compelling justification to give less deference to the child pornography guideline. 616 F.3d at 185. It opined, without any support, that [t]he § 2G2.2 sentencing enhancements were not developed by the Sentencing Commission through empirical studies and their application routinely resulted in Guidelines projections near or exceeding the statutory maximum, "even in run-of-the-mill cases." Id. at 186. However, other circuit courts have rejected this same argument.

In United States v. Miller, the Fifth Circuit responded to the Dorvee argument in the following way:

4

> With great respect, we do not agree with our sister court's reasoning. Our circuit has not followed the course that the Second Circuit has charted with respect to sentencing Guidelines that are not based on empirical data. Empirically based or not, the Guidelines remain the Guidelines. It is for the Commission to alter or amend them. The Supreme Court made clear in Kimbrough v. United States that "[a] district judge must include the Guidelines range in the array of factors warranting consideration," even if the Commission did not use an empirical approach in developing sentences for the particular offense. Accordingly, we will not reject a Guidelines provision as "unreasonable" or "irrational" simply because it is not based on empirical data and even if it leads to some disparities in sentencing.

665 F.3d 114, 120–21 (5th Cir. 2011) (internal citations omitted). Likewise, the Eleventh Circuit rejected the Dorvee argument, observing:

> We have previously rejected the argument that U.S.S.G. § 2G2.2 is inherently flawed. United States v. Wayerski, 624 F.3d 1342, 1354–55 (11th Cir. 2010); United States v. Pugh, 515 F.3d 1179, 1201 n. 15 (11th Cir. 2008). Scott's reliance on a Second Circuit case criticizing § 2G2.2, United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010), is therefore misplaced.

United States v. Scott, 476 Fed. App'x 845, 846 (11th Cir. 2012).

In addressing a similar attack on the child pornography guidelines, the court in United States v. Johnson, 765 F. Supp. 2d 779, 782 (E.D. Tex. 2010), was emphatic about the respective roles of Congress, the Sentencing Commission, and the courts:

> Judicial discretion is not based upon the theory that the court is in a special position to correct or improve congressional enactments. Rather, judicial discretion is appropriate because, while Congress must make policy decisions that affect and promote a national system of justice, the sentencing court is familiar with the facts of the individual case and has an opportunity to evaluate the Defendant in person. The court may, after considering the particular aspects of the case in light of the 18 U.S.C. § 3553 factors, decide to depart or vary from the Guidelines. (citation omitted).

> <u>Gratuitous attacks on the Guidelines or Congress by a defendant for "policy reasons" add nothing to the particular analysis of a particular case, or to the law in general.</u>

<u>Id.</u> at 782 (emphasis added).

Even this District has had occasion to recognize that it is Congress's prerogative to dictate penalties and sentencing enhancements based upon retributive judgment that certain crimes warrant serious punishment:

> For more than thirty years Congress has focused attention on the scope of child pornography offenses and the severity of penalties for offenders. By creating new offenses, enacting new mandatory minimums, increasing statutory maximums, and providing directives to the United States Sentencing Commission, Congress has expressed its will regarding appropriate penalties for child pornography offenders.

<u>United States v. Webb</u>, 785 F. Supp. 2d 790, 796 (D.N.D. 2011).

Defendant's sentencing memorandum ignores the careful analysis that led to the development of the child pornography guideline and the history behind the 1991, 1996, 2003, and 2004 amendments to § 2G2.2.  The history of these amendments—which is too voluminous to detail here—reflect Congress's study of the sources and harms of child pornography and the Sentencing Commission's involvement with Congress in the development of the guidelines.  <u>See generally</u>, The History of the Child Pornography Guidelines available at <u>www.ussc.gov/general/20091030_History_Child_Pornography-Guidelines.pdf</u>; <u>See also</u>, <u>United States v. Crisman</u>, 39 F.Supp.3d 1189, 1205-1216 (Jul. 22, 2014, D. N.M.) (setting forth a detailed history of the nine revisions to the child pornography guidelines). Because § 2G2.2 is the product of both the Sentencing Commission's institutional expertise and Congressional legislation, the United States

6

therefore respectfully requests that this Court be guided by § 2G2.2 in determining a sentence that is "sufficient but not greater than necessary" to achieve the § 3553 objectives.

### III. The Sentencing Commission's 2021 Report Does Not Support A Variance as Applied to Defendant

Despite defendant's argument, the Sentencing Commission's recent Report regarding the Federal Sentencing of Child Pornography Non-Production Offenses does not endorse a lower guideline range for all child pornography defendants or this defendant, in particular. In its Report, the Sentencing Commission examined the evolution of technology since its 2012 Child Pornography Report and its impact on the applicability of the sentencing enhancements.[1] It further examined the emerging social science research about offender behavior and provided a recidivism analysis of non-production offenders released from incarceration in 2015. See USSG 2021 Report at 1-4. In the end, the Commission reaffirmed its recommendation first proposed in its 2012 Report that the sentencing scheme be revised to more fully account for certain factors; namely, content, community and conduct. Id. at 4-7.

Most importantly, this Report, much like the 2012 Report, is merely a recommendation to Congress and, although the 2021 Report is relatively recent, neither has been adopted by Congress. Moreover, neither Report proposes specific revisions nor

---

[1] The 2012 Report can be found at
https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Executive_Summary.pdf.

7

do they offer what, if any, a revised guideline would look like. Historically, revisions to USSG § 2G2.2 have resulted in increases to the base offense level and the addition of new offense-specific characteristics. Therefore, even if Congress directed the Sentencing Commission to amend the child pornography guideline consistent with this Report, it cannot be assumed that a revised guideline range would yield a reduced sentencing range for this defendant. To the contrary, a reading of the recent Report reveals that the Sentencing Commission would author a revision that would punish individuals subject to the above-mentioned factors with specific offense enhancements.

The Commission determined that these three factors—content, community, and conduct—were the most relevant and distinguishing factors for non-production child pornography offenses and offender behavior. See USSG 2021 Report at 28. To that end, it recommended the following be considered when imposing a sentence: "(1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense." See USSG 2021 Report at 2. Focusing on these three factors, the Sentencing Commission concluded, would better adequately account for variations in offender culpability, sexual dangerousness, and changes in technology. Id.

### A. Content of Defendant's Collection and Nature of his Collecting Behavior

The first recommended area of focus regards the content of the offender's child pornography collection and the nature of the offender's collecting behavior. The

defendant here was not an occasional viewer of child pornography with no particular sexual interest in children. Instead, he regularly viewed and collected child pornography depicting prepubescent children that he presumably used for his own sexual gratification. The images and videos he sought and obtained depict children as young as babies and toddlers being sexually exploited, for which defendant received a two-level enhancement for possessing material involving prepubescent minors under § 2G2.2(b)(2).

Notwithstanding application of this enhancement, defendant invites this Court to ignore the fact that defendant possessed such images because in 2019 nearly every offense involved prepubescent victims. However, nearly every offense in 2019 did not involve babies and toddlers. Per the Report, only about half of the non-production child pornography offenders in 2019 had images and videos of infants and toddlers. See USSG 2021 Report at 31. Among these offenders, distribution offenders most commonly had images or videos of the youngest victims, followed by receipt offenders, and then possession offenders. Id. In particular, "[a]mong offenders sentenced for distribution, 27.4 percent of the cases involved images or videos of infant victims" and an additional 31.5 percent of distribution cases involved images and videos of toddlers. See 2021 USSG Report at 31.

Comparatively, less than half of possession offenders possessed similar type images. Id. Specifically, 19.4 percent of possession offenders had images or videos of infants and 24.5 percent of possession offenders had images or videos of toddlers. Id. So, even though the presence of this material has been identified as an aggravating factor in the Report, there currently is not an enhancement that distinguishes this case from

other cases where the offender does not possess such imagery. Therefore, any variances should arguably be reserved for those offenders who possess material depicting prepubescent children but who do not possess material depicting infants and toddlers.

Additionally, defendant possessed child pornography that depicts children who appeared to be in pain when they were penetrated by adult males and children who were subjected to other acts of violence such as bondage. Defendant received a four-level enhancement under § 2G2.2(b)(4) for possessing such material; specifically, material that depicts sadistic or masochistic conduct or abuse of an infant or toddler. Once again, he requests that this Court either ignore this enhancement or vary downward from the guideline range because it applied in 84 percent of all child pornography cases in 2019.

However, defendant fails to recognize that the statistics for these cases do not include all people who unlawfully possess child pornography. Rather, the statistics in the Report only represent federal defendants for the year 2019, not all offenders. Thus, it is not accurate to say that this statistic means that over 84 percent of all people who violate the child pornography laws possessed sadistic or masochistic material; it means that over 84 percent of all offenders the federal government choose to prosecute do. In other words, Congress has defined possession of material that depicts graphic violence against children as an aggravating factor, and the government has targeted its limited resources at these more significant offenses. Put another way, the fact that the majority of defendants in a single year were found to have possessed violent images does not make that fact less significant in any one of those cases.

The court in United States v. Cunningham, 680 F.Supp.2d 844, 851 (N.D. Ohio

2010) expressly rejected the "frequency of application of certain enhancements" argument as a negation of the § 2G2.2 guideline by noting that an opposite conclusion should be drawn instead: "[T]he fact that more than fifty percent of offenders have over 300 images and that over sixty percent have sadistic and masochistic images supports a conclusion that even more harsh sentences are required for deterrence." Id. at 852–53. The Fifth Circuit also rejected this same argument, opining that it is not "illogical" to differentiate between defendants who view or distribute prepubescent images of children being raped and sodomized, as one example of the guideline enhancements, and those defendants who view or distribute child pornography depicting pubescent children who are not engaged in sexual activity that is violent or sadistic. Miller, 665 F.3d at 123. The court stated: "We reject the view that because there are many defendants who view images of children under the age of 12 being raped and sodomized, and because there are many defendants who obtain hundreds of pornographic images of children, the terms of imprisonment should be reduced for all who receive or transport child pornography, regardless of the content of those images and regardless of the number of the images. The Guidelines treat differing behavior differently, and in our view, that differentiation is not unreasonable." Id.

   The Report also analyzed an offender's method of distribution. See USSG Report at 33. In 2019, sharing through peer-to-peer (P2P) networks was the primary method of distribution, with the majority of those offenders using P2P networks as their exclusive method of distribution. See 2021 USSG at 33. This method of sharing does not include present and active participation. Rather, like a self-serve gas station, P2P users store their

11

files in a shared folder, thereby making those files available for other P2P users to download without the original user's active input or specific knowledge. United States v. Shaffer, 472 F.3d 1219, 1223 (10th Cir. 2007) (comparing P2P networks to a self-serve gas stations).  In contrast to this passive method of sharing, defendant, with full knowledge and active participation, engaged in one-to-one exchange of child pornography via various social media platforms, such as Telegram and Kik.  These are considered more "personal" methods of distribution that are usually indicative of an offender's participation in an online child pornography community.  Id.  Given the content of defendant's images and his active and personal method of distribution, he falls into the category of offenders who have a higher culpability than even the majority of other child pornography distributors.

**B.  Defendant's Participation in a Child Pornography Community**

The second focus of the report examined an offender's degree of involvement with others in an internet community devoted to child pornography and child exploitation. Consideration of this factor weighs heavily in favor of a guideline sentence.  Per the Sentencing Commission's Report, "the more serious types of non-production child pornography offenders under § 2G2.2 were more likely to participate in a community (50.9 percent of distribution offenders and 41.8 percent of receipt offenders)." See USSG 2021 Report at 39.

Defendant here was intimately involved with a community of online offenders via various platforms.  He conversed directly with like-minded users, wherein they traded child pornography, including some material defendant obtained directly from other

12

minors. In the midst of his trading child pornography with other users, defendant also discussed during private chat conversations his sexual interest in very young children to include committing acts of violence against children. This higher level of socialization—as it's referred to in the Sentencing Commission Report—represents a higher level of culpability and the recommended guideline sentence accounts for some of this behavior. See 2021 USSG Report at 39.

Specifically, defendant's calculation includes a 5-level enhancement for distribution for any valuable consideration, but not for pecuniary gain under USSG § 2G2.2(b)(3)(B). See PSI at ¶ 28. Contrary to defendant's argument, this enhancement does not routinely apply in all, or even in most, child pornography cases nationally or in this District. See USSG 2021 Report at 34, Table 2 (reflecting that P2P networks are the most common method of child pornography distribution). Application of this specific distribution enhancement requires more than passive P2P distribution. See United States v. Mayokok, 854 F.3d 987 (8th Cir. 2017) (holding that pure gratuitous transfer of child pornography is not "distribution"); United States v. Durham, 618 F.3d 921 (8th Cir. 2010) (finding that mere P2P file sharing network does not automatically trigger application of the distribution enhancement). Typically, there must be "personal" distribution to another individual, as was here, before this enhancement will apply. See United States v. Smith, 910 F.3d 1047 (8th Cir. 2018) (upholding only 2-level distribution enhancement for "other" distribution under USSG § 2G2.2(b)(3)(F) where defendant merely allowed others to access his shared folder on a P2P network). Accordingly, defendant's involvement with a community of other online child

13

pornography offenders to include "personal" distribution is a factor this Court should consider in determining the appropriate sentence.

### C. Defendant's Engagement in Aggravated Conduct Not Captured by the Guidelines

Finally, the Sentencing Commission recommended that the guidelines be revised to include a focus on an offender's engagement in sexually abusive or exploitive conduct in addition to the child pornography offense, either during the instant offense or in prior history. See USSG 2021 Report at 39. Consideration of this factor weighs most heavily in favor of a guideline sentence. In its Report, the Sentencing Commission identified "aggravating conduct" as "(1) contact sex offenses; (2) non-contact sex offenses; and (3) prior non-production child pornography offenses." See USSG Report at 40. As already outlined in its sentencing memorandum, defendant has a long history of offending against children, involving both contact sex offenses and non-contact sex offenses. This conduct has an adverse effect on children and represents a serious public safety risk.

Indeed, the PSIR recommends that defendant receive a sentencing enhancement for having engaged in this "aggravating conduct." See PSI at ¶ 30. Comparatively, of the offenders who engaged in "aggravating conduct" in 2019, only 46% received a guideline enhancement for pattern of activity" because application for the pattern of activity enhancement requires some type of contact offending. See USSG Report at 41; See also, United States v. Pharis, 176 F.3d 434 (8th Cir. 1999) (finding it was improper to apply the pattern of sexual exploitation enhancement where none of defendant's offenses, including his prior offenses, involved physical sexual contact). "Thus, although a

substantial portion of offenders who engaged in aggravating conduct received a guideline sentence or statutory enhancement accounting for that behavior, the guideline and statutory scheme for non-production child pornography offenses did not directly provide for an increased sentence based on aggravating conduct in more than half of such cases." Id. at 42. Because this behavior is not so prevalent as to prohibit meaningful comparisons among non-production child pornography offenders, the Sentencing Commission recommended that this factor be considered by a district court when imposing sentence. Id. at 43. This factor therefore represents an area where the Sentencing Commission's recommendation could be read to endorse a guideline sentence to account for this defendant's conduct.

In summary, the Report reached no definitive conclusions regarding lowering the guideline range for child pornography defendants in general or for any particular defendant. In fact, as set forth above, the Report endorses a future approach which would surely result in higher sentences for non-production child pornography offenders who participated in a child pornography community and those who engaged in aggravating conduct. See USSG Report at 44. "[I]n contrast to the specific offense characteristics, which apply very frequently across all types of non-production child pornography offenders, these behaviors may provide a more effective means of distinguishing offenders based on culpability and dangerousness." Id.

Because both these behaviors are present in this case, the Court should decline to vary from the recommended guideline range. Per the Report, the presence of these factors—participating in a child pornography community and especially engaging in

15

aggravating conduct—has a substantial effect on whether non-production child pornography offenders received a sentence within the guideline range, rather than a downward variance. Accordingly, the United States respectfully requests that this Court give consideration to the guidelines by imposing a sentence at the low end of the recommended guideline range.

Dated: May 28, 2024

                                                MAC SCHNEIDER
                                                United States Attorney

By:   */s/ Jennifer Klemetsrud Puhl*
       JENNIFER KLEMETSRUD PUHL
       First Assistant United States Attorney
       Quentin N. Burdick United States Courthouse
       655 First Avenue North - Suite 250
       Fargo, ND  58102-4932
       (701) 297-7400
       ND Bar Board ID No. 05672
       Jennifer.Puhl@usdoj.gov
       Attorney for United States